*In re* RAILROAD COMMISSIONERS' decision, relative to grade crossing of a proposed highway with the CANADIAN PACIFIC RAILWAY, at Lakeview, in Piscataquis County.

Piscataquis.     Opinion March 1, 1895.

*Railroads. Grade Crossings. Railroad Commissioners. R. S., c. 18, § 27;*
*Stats. 1853, c. 41, § 3; 1874, c. 214; 1878, c. 43; 1883, c. 167, §§ 1, 2;*
*1885, c. 310, 312; 1889, c. 282.*

It has been the paramount intent of the Legislature, since the statute of 1878, to place all railroad crossings in the State under the control of the railroad commissioners.

The several statutory provisions in regard to the right of application and the apportionment of the expense, enacted in different years, are of a subordinate character and secondary importance. They are not all conditions precedent to the jurisdiction of the railroad commissioners in unincorporated places. The fact that all the provisions of the statute respecting the right of application and the adjustment of the expense in the case of cities and towns, are not also applicable to unincorporated places, cannot take away the jurisdiction of the railroad commissioners over the latter while there is an express provision applicable to all crossings authorizing an application by the railroad company, and also placing upon the company the burden of the expense.

In the case of cities and towns, either the municipal officers or the railroad company may invoke the jurisdiction of the railroad commissioners; and thereupon the expense of building the way within the limits of the railroad may all be imposed on the railroad company, or be apportioned between the railroad company and the town, as the commissioners may determine. But with respect to ways in unincorporated places, where there are no municipal officers, the application can only be made by the parties owning or operating the railroad; and inasmuch as there is no provision for the payment or apportionment of the expense applicable to such a case, except that which places this burden on the railroad company, the expense must be borne by the railroad company. *Held;* That railroad commissioners have jurisdiction of railroad crossings in unincorporated places.

ON EXCEPTIONS.

These proceedings began with a petition of the Canadian Pacific Railway to the Railroad Commissioners, the material parts of which are as follows :

The Canadian Pacific Railway Company, a corporation duly established by law, and operating and maintaining a line of railway across said State from Mattawamkeag to the western boundary of the State, respectfully represents that the county

commissioners of Piscataquis county have laid out a highway in township four (4), range eight (8), north of Waldo Patent, an unincorporated town in said Piscataquis county, which crosses said company's railway at grade, said highway having been located and established by metes and bounds as follows, viz:

(Description of highway.) And said company further represents that said highway is laid out through and across the land and right of way of said company used for station purposes at its station called Lakeview in said township No. 4, range 8, as it is so near the switch controlling the union of the main line of railway with the principal siding there, that said switch may not be safely used; and so said company may not be able to set off or take on cars there, or cross trains, and thus be unable to do its business at said station. From the center of the head block of the switch to the southerly line of said highway, the distance is only one foot ten and one half inches and the throw of the swing rail connected with said switch is five inches, so that a crossing there could not be safely planked if said switch is to be maintained.

Wherefore, said company requests your honorable board to give notice and hearing, and determine whether said highway shall be permitted to cross at grade said company's railway, and the land and right of way of said company used for station purposes as aforesaid or not; and if it shall be permitted to cross, to determine the manner and condition of crossing, and how the expense of building and maintaining so much of said highway as is within the limits of said company's railway location shall be borne.

November 10th, 1893.

After a hearing on the petition, the railroad commissioners declined to take jurisdiction of the matters, and in their report to the court, made under the statute, assigned the following, among others, as the reasons for not taking jurisdiction:

"The board of railroad commissioners was created by statute to do and perform certain specific duties. Its jurisdiction extends just so far as the statute specifically conferred the same. It is endued with no general powers of supervision of railroads.

"Formerly town-ways and highways were located and constructed across railroads wherever and whenever the county commissioners or municipal officers of towns determined to do so, and too, without any limitations or restrictions. The power of the county commissioners to locate and cause to be constructed ways across railroads in unincorporated townships, without limitations or restrictions still exists, unless that power has been taken away by some subsequent statute enactment. Has that been done?" Quoting R. S., c. 18, § 27, as amended by Stat. 1889, c. 282, the commissioners continue :

"It will be noticed that by the provisions, above quoted, that an application to the board of railroad commissioners, relative to such crossings, can be made only by the 'municipal officers of the city or town wherein such way is located or by the parties owning or operating the railroad.' Under its provisions the board has power to determine whether the expense of building and maintaining such crossing, as may be within the limits of the railroad, 'shall be borne by such railroad company or by the city or town' wherein such way is located. The provisions of the statute relate wholly to ways in incorporated cities and towns. The right to petition is by its provisions limited to the municipal officers of such cities or towns and the railroad company.

"The able counsel for the petitioners contend that the intent of the statute was to give the railroad commissioners jurisdiction of railroad crossings wherever situated ; that if the crossing is in an unincorporated township, the county commissioners would, under the provisions of this statute, have the right to petition the board, as municipal officers of cities or towns have.

"We cannot believe the court would sanction such a liberal construction of this statute. 'Courts of justice can give effect to legislative enactment only to the extent to which they may be made operative by a fair and liberal construction of the language used. It is not their province to supply defective enactments by an attempt to carry out fully the purposes which may be supposed to have occasioned those enactments.' *Swift* v. *Luce*, 27 Maine, 286.

"If the board of railroad commissioners has jurisdiction of cases of this kind at all, it has power to exercise it to its full extent. Suppose that in the exercise of that jurisdiction they should determine that the way should be constructed over or under the railroad, and that the plantation or unincorporated township should bear the expense of constructing and maintaining such crossing, would the county be chargeable with such expenses, or could the county commissioners under the provisions of section 41, chapter 18 of Revised Statutes, assess upon the owners of the land over which the way was located and compel them to pay such expenses? Can the right of eminent domain be thus indirectly exercised and the right of the citizen to hold and enjoy his property be thus interfered with and encumbered? We think it cannot be. Therefore, we must hold that the statute above quoted, gives to this board no authority to determine the manner and conditions in which highways may cross a railroad in unincorporated townships or unorganized plantations." . . .

Upon the coming in of the report of the railroad commissioners, the presiding justice ruled *pro forma* to accept it; thereupon the petitioner took exceptions.

*C. F. Woodard*, for petitioner.
*J. B. Peaks*, for county commissioners.

SITTING: PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, STROUT, JJ.

WHITEHOUSE, J. In a petition filed November 10, 1893, the Canadian Pacific Railway Company asked the railroad commissioners of Maine to determine whether a highway laid out by the county commissioners in an unincorporated town in Piscataquis county should be permitted to cross its railway at grade near its station called Lakeview; and also to determine the manner and condition of crossing and how the expense of building and maintaining that part of the highway within the limits of the railway, should be borne. In their decision reported to the February term, 1894, of the Supreme Judicial Court in that county, the railroad commissioners held that their only authority

in the premises was derived from Revised Statutes, c. 18, § 27, as amended by the acts of 1885, and 1889 ; that the statutes thus amended have no application to such crossings by highways laid out in unincorporated towns, and therefore declined to take jurisdiction of the subject matter. The presiding judge affirmed this decision in a *pro forma* ruling to which the petitioner has exceptions.

The question now to be considered, therefore, is whether such jurisdiction of railroad crossings in unincorporated places is conferred upon the railroad commissioners by existing statutes. We think it is. An analytical and historical review of the legislation on this subject from 1853 to 1889, clearly shows the progressive tendency of legislative opinion to have been in harmony with the judgment of this court as expressed *in re Railroad Commissioners*, 83 Maine, 273, that, "public safety requires the intersection of railroad tracks and roads to be under the control of the railroad commissioners ;" and when the last enactment (c. 282, laws of 1889) is construed in the light of all preceding enactments on the same subject, it satisfactorily appears that their authority over such crossings in unincorporated places is unquestionably within both the literal terms and the true scope and purpose of the law.

It was provided by the Act of 1853 (c. 41, § 3) that the conditions and manner of locating railroads across highways should be determined in writing by the county commissioners, and this provision appears in the Revised Statutes of 1857 and of 1871.

Chapter 214 of the public laws of 1874 allowed town ways and highways to be laid out across, over or under any railroad track, and imposed upon the railroad company the expense of building and maintaining that part of the way within the limits of the railroad.

Chapter 43 of the laws of 1878 provided that when such crossing was at grade such expense should be borne by the railroad, and when not at grade the railroad commissioners should determine whether such expense should be borne by the railroad company or by the town, or be apportioned between the railroad and the town.

Section 2 of chapter 167 of the laws of 1883, provided that " when any way is laid out across a railroad, the railroad commissioners, upon application of the parties owning or operating such railroad, shall . . . determine the manner and conditions of crossing such railroad." But this act was not deemed a repeal by implication of the provision in the preceding act of 1878 that when the crossing was at a grade, the expense should be borne by the railroad ; for in the revision of 1883 it is still provided that when town ways and highways are laid out across, over or under any railroad track, the railroad commissioners, on application of the parties owning or operating the railroad, shall upon notice and hearing determine the number and conditions of crossing the same ; and when such way crosses such track at grade, the expense of building and maintaining so much of such way as is within the limits of such railroad shall be borne by the railroad company.    R. S., c. 18, § 27.

Chapter 310 of the laws of 1885, provides that the railroad commissioners should thus determine the manner and conditions of crossing " on application of the municipal officers of the city or town wherein such crossing is situated, or of parties owning or operating the railroad."

Although not directly related to the point under discussion, section 1 of the Act of 1883 above named, and chapter 312 of the laws of 1885, are further illustrations of the manifest intention of the legislature to place all railroad crossings under the supervision of the railroad commissioners.    The former prohibited the laying out of any way across land of a railroad company used for station purposes except upon the adjudication of the railroad commissioners that common convenience and necessity require it ; and the latter authorized railroad commissioners to determine the manner and conditions of locating railroads across highways and town ways.

We come now to the latest expression of legislative will upon this subject, found in chapter 282 of the laws of 1889.  'Section 1 of this act, amends section 27 of chapter 18, R. S., so as to read as follows : " Town ways and highways may be laid out across, over, or under any railroad track . . . except that before such way

shall be constructed, the railroad commissioners, on application of the municipal officers of the city or town wherein such way is located, or of the parties owning or operating the railroad, shall . . . determine whether the way shall be permitted to cross such track at grade or not, and the manner and condition of crossing the same, and the expense of building and maintaining so much thereof as is within the limits of such railroad shall be borne by such railroad company, or by the city or town in which such way is located, or shall be apportioned between such company and city or town, as may be determined by said railroad commissioners." . . . Section 2 of the act prohibits the crossing of a public way by a railroad unless authorized by the railroad commissioners; and section 3 gives these officers jurisdiction over the change of grade, or of the course of public ways to facilitate the crossing of a railroad, or to permit a railroad to pass at the side of the same.

This chapter is only a revision of prior enactments with a modification of the authority of the railroad commissioners in regard to the assessment of the expense. It contains no suggestion of a purpose to deviate from the uniform tendency of previous legislation to place all intersections of railroads and public ways under the control of the railroad commissioners. On the contrary, their authority over all such crossings is here reaffirmed and enlarged. In its literal terms the statute confers jurisdiction over all such crossings wherever situated. Unincorporated places are not expressly excepted from its operation; and no reason has been or can be assigned why the railroad commissioners should not have control of such crossings in unincorporated places as well as in cities and towns.

But it is suggested that unincorporated places must be held to be excepted by implication because in case of cities and towns, there is express authority for the municipal officers to make the application and for the railroad commissioners to apportion the expense between the railroad company and the city or town; while no provision is made for such application by the county commissioners, who have analogous powers and duties relative to ways in unincorporated places, and no authority expressly

given to the railroad commissioners to apportion the expense between the railroad on the one hand and the county, or the county and land owners on the other.

If it were quite certain that the legislature intended no distinction between incorporated and unincorporated places with respect to the right of application and the payment of the expense and that the failure to make express provision therefor in the case of the latter was purely accidental; and it should further appear that the leading purpose of the legislature would be otherwise defeated, there would be much force in the argument that such omission ought to be supplied by judicial construction,—on the authority of numerous cases holding that the "meaning of the legislature may be extended beyond the precise words used in the law, from the reason or motive upon which the legislature proceeded from the end in view or the purpose which was designed." *U. S.* v. *Freeman*, 3 How. 556; *Murray* v. *Baker*, 3 Wheat. 541; *Gray* v. *Co. Com.* 83 Maine, 436; Endlich on Int. of Statutes, § 108. But as there may be a doubt whether the legislature did not intend to make a distinction in the particulars mentioned, and as the general purpose of the legislature in this case may be otherwise attained, such a liberal construction of the statute might be deemed an assumption of legislative functions.

To place all railroad crossings, within the limits of the state, under the control of the railroad commissioners has manifestly been the paramount object of the legislation on this subject since the enactment of 1878. The several provisions in regard to the right of application and the apportionment of the expense, enacted in different years, are of a subordinate character and of secondary importance. They are not all conditions precedent to the jurisdiction of the railroad commissioners in unincorporated places. The fact that all the provisions of the statute respecting the right of application and the adjustment of the expense in the case of cities and towns, are not also applicable to unincorporated places cannot take away the jurisdiction of the railroad commissioners over the latter while there is an express provision applicable to all crossings, authorizing an application

by the railroad company and also placing upon the company the burden of the expense. In the case of cities or towns, either the municipal officers or the railroad company may invoke the jurisdiction of the railroad commissioners, and thereupon the expense of building the way within the limits of the railroad, may all be imposed on the railroad company, or be apportioned between the railroad company and the town as the commissioners may determine. But with respect to ways in unincorporated places where there are no municipal officers, the application can only be made by the parties owning or operating the railroad ; and inasmuch as there is no provision for the payment or apportionment of the expense applicable to such a case, except that which places this burden on the railroad company, " the expense of building and maintaining so much thereof as is within the limits of such railroad shall be borne by such railroad company." And we have seen that prior to 1885, such was the law relative to all grade crossings under the respective provisions of the acts of 1878 and 1883 above mentioned.

In this case the application appears to have been duly made by the Canadian Pacific Railway Company, and the railroad commissioners should have taken jurisdiction of the subject matter by virtue of chap. 18, sect. 27, R. S., as amended by the acts of 1885 and 1889 above specified, and after due notice should have heard and determined the questions presented.

*Exceptions sustained.*