180 P.2d 853

### SMITH v. SMITH.
### No. 7324.

Supreme Court of Idaho.
May 15, 1947.

George Donart and D. L. Carter, both of Weiser, for appellant.

Herman Welker, of Payette, and Frank D. Ryan, of Weiser, for respondent.

BUDGE, Chief Justice.

The facts in this case are not materially in conflict. Briefly stated, they are substantially as follows:

September 19, 1941, appellant was granted a default decree of divorce from respondent. The decree provided that appellant should have the custody of Julia Smith, minor child of the parties, *subject to the right of respondent to see said minor child at reasonable times and places.* October 3, 1945, respondent filed a petition for an order to show cause In re Application for Modification of Decree and, among other things, set up that September 19, 1941, the court awarded appellant a decree of divorce; that since the granting of the decree conditions and circumstances surrounding the parties and the child had materially changed; that appellant had remarried and was a resident of Ada County; that for more than a year last past his former wife had completely abandoned said child to its grandparents, who reside in Weiser, Wash-

ington County; that appellant had given up all parental control over said child, and was no longer giving her the motherly care she needed and deserved. Respondent also set out that he has fully complied with the decree and is not in default thereunder; that appellant refused to permit respondent the right of visitation with said child at reasonable times and places or otherwise; that appellant has influenced the child's mind against her natural father, thereby wilfully and maliciously alienated the affection of said child; that respondent repeatedly made attempts to visit the child, and each time appellant or her agents, the grandparents of the child, refused respondent the right of visitation. There are other allegations in the petition to the effect that the grandparents had prejudiced the child's mind so that she refused to accept presents from respondent, refused to associate with him as she had formerly done, and had apparently lost all regard and affection for him due to the acts and conduct of appellant and the grandparents.

It is further alleged that January 13, 1945, Lenore Sanders Weeks, husband of appellant, petitioned the Probate Court of Washington County for an order of adoption of the minor child, Julia Cecil Smith, alleging, among other things, that the custody of the child was given to Lucille Smith Weeks, his wife, by the decree of divorce heretofore referred to and, further, that consent of adoption was filed by appellant, together with an agreement of adoption signed by Lenore Sanders Weeks. The petition for adoption of the minor child, the agreement, the consent of appellant to the adoption, and the order of adoption were all filed January 13, 1945. No time was set for the hearing of said petition, and no notice of said hearing was served upon respondent, the natural father, and he had no knowledge of said proceedings until the 19th day of September, 1945. The order of adoption changed the name of the minor child from Julia Cecil Smith to Julia Ann Weeks, and effectively and absolutely deprived respondent of his child.

■ The petition for adoption alleges, inter alia, "that Julia Cecil Smith is a minor of the age of 5 years * * * and is domiciled in Washington County, Idaho." The petition does not allege the domicile or residence of the petitioner Weeks. The order of adoption recites, independent of any allegation in the petition, that Weeks, the petitioner, "is an inhabitant and resident of the County of Washington, State of Idaho." The petition is silent as to the domicile or residence of the mother of the minor child, now Mrs. Weeks. There is no allegation of abandonment contained in the petition, although abandonment is recited in the order, the order, therefore, not being sustained by the petition.

■ Nonsupport and abandonment are not synonymous. Nonsupport, in and of itself, does not constitute abandonment.

"In the second place we are persuaded to say that the mere failure of the parents of a minor child, in the custody and under the care of a third party, to contribute while it is in such custody and care, to the support and maintenance of such child for a period of one year, does not itself constitute an abandonment of the minor within the purview of said section of the Code. [sec. 224, C.C., same as our sec. 31-1104, I.C.A.] If the rule were otherwise—that is, if an adjudication of abandonment could legally be predicated on the mere failure by the parents to support their minor children—the result, in inumerable instances, would be to work a manifest wrong upon parents. It is not difficult to conceive of circumstances wholly beyond the control of parents having the deepest affection for their children which would render it impossible for them to support their children or care for them in a proper way. It would, indeed, be a harsh rule which would, under such circumstances, authorize a judicial determination by which the natural right of the parents to the custody and control of their children would be forever severed." In re Kelly, 25 Cal.App. 651, 145 P. 156, 158. See, also, Platt v. Moore, Tex.Civ. App., 183 S.W.2d 682.

The record in this case shows the father of the child made all payments of support money prior to the application for modification of the decree, consequently he was not in contempt.

In respondent's petition for modification of the decree it is alleged that the proceedings and order of adoption had and entered in the Probate Court of Washington County are void.

This appeal is, first, from the judgment declaring the probate proceedings heretofore referred to, void and, second, from the order of the court modifying the decree of divorce awarding the custody of the minor child to Lucille Smith Weeks during each regular school year, and that Virgil Smith, respondent here, should have the custody of said minor child during the summer vacation period during the minority of said child, otherwise the decree to be and remain as heretofore.

The two questions, as above stated, are here for determination. If the proceedings in the probate court were valid and not subject to collateral attack, no necessity would exist for deciding the second question, namely, modification of the decree of divorce.

Directing our attention to the first question, can the order of adoption be collaterally attacked, appellant's contention is that the order made and entered by the probate court is regular on its face therefore cannot be attacked collaterally; that said order determined the status of the child, and the district court was without jurisdiction to change or modify said decree of divorce, having been divested of its jurisdiction.

In the opinion of the writer, in a proceeding of this nature which must be strictly construed, the order of adoption is not regular on its face. The recitals in the order, as pointed out, are not alleged in the petition for adoption. Abandonment, which under certain circumstances may be urged as obviating the necessity for personal service or notice, is not alleged in the petition. It is not alleged nor contended that the father is not a fit and proper person to have custody of the child. The respondent, not being made a party to the adoption proceedings, had no right of appeal. The method pursued to attack the illegality of the order was available to respondent. Hay v. Hay, 40 Idaho 159, 232 P. 895. The order of adoption was void ab initio.

The rule is that an attempted adoption of a minor child by its mother and her second husband without the consent of the natural father, from whom the mother was granted a divorce for cruelty and by the decree awarded the custody of the minor child *with reservations of certain rights to the father,* is void, therefore may be attacked either directly or collaterally. Leland v. Isenbeck, 1 Idaho 469; Moyes v. Moyes, 60 Idaho 601 (syl. 9) 94 P.2d 782; 2 C.J.S., Adoption of Children, § 50, p. 440.

"Generally speaking, if a judgment is void it is subject to collateral impeachment. It has been said that 'A judgment absolutely void may be attacked anywhere, directly or collaterally whenever it presents itself, either by parties or strangers. It is simply a nullity, and can be neither a basis nor evidence of any right whatever.' " 15 Cal. Jur. sec. 140, p. 49, note 6. See, also, State v. Bayles, 121 Wash. 215, 209 P. 20; Grady v. Dashiell, 24 Wash.2d 272, 163 P.2d 922, at page 932.

Adoption statutes open to construction and interpretation should be strictly construed and every intendment taken in favor of the natural parent not consenting to adoption. As was held in In re Jackson, 55 Nev. 174, 28 P.2d 125, 129, 91 A.L.R. 1381:

"The custody must be absolute. To conclude otherwise would be to attribute to the Legislature a very slight regard for the great domestic relation of parent and child. As previously stated, consent lies at the foundation of adoption statutes."

Section 31-1104, I.C.A., provides that notice to a parent in an adoption proceeding is not necessary where the parent has either abandoned or ceased to provide for the support of a minor child. This section is not applicable where the probate court, as in this case, was without jurisdiction over the parties. A judgment entered without jurisdiction is void. In the proceedings before us the natural father had received no notice, either personal or constructive, and knew nothing of the adoption proceedings until subsequent thereto. Upon this point we direct attention to the case of Beatty v. Davenport, 45 Wash. 555, 88 P. 1109, 1111, 122 Am.

St.Rep. 937, 13 Ann.Cas. 585, and the cases therein cited, which hold:

"In this case it is not even claimed that the respondent was a party to the decree of adoption, or that she was served with notice, or that she had any knowledge of such proceedings, until after the judgment had been entered. No notice, constructive or otherwise, was attempted to be given to her. It is true the petition alleges that she had abandoned the children, and the court so found, without giving her an opportunity to be heard on that question. It is also true that the decree of adoption recited that the father had the custody, care, and control of the infant children, but this recital was not binding upon her, because she was not a party and had no opportunity to be heard upon it. *The decree of adoption was binding only upon the parties before the court and their privies.* It was not binding upon respondent, because she was neither a party nor a privy to it. The court therefore had no jurisdiction to determine her rights. *The rule is that a judgment can always be attacked collaterally by one who was not a party or privy to it.* Black on Judgments (2d Ed.) §§ 278, 534. A rule otherwise would permit a man to be condemned unheard, or his property taken without notice, which, of course, is contrary to the plainest principles of law or justice. The basis of the rule that a judgment regular upon its face cannot be attacked collaterally is that there has been an adjudication of the question between the parties. Where it appears from the face of the record that a party interested was not before the court, and had no notice or opportunity to be heard, the rule does not apply. Such parties may be heard upon questions of both law and fact as fully as though no judgment had been rendered. * * * Schiltz v. Roenitz [86 Wis. 31], 56 N.W. 194, 21 L.R.A. 483, 39 Am.St.Rep. 873; Holmes v. Derrig, 127 Iowa 625, 103 N.W. 973; Burger v. Frakes [67 Iowa 460], 23 N.W. 746; Nugent v. Powell [4 Wyo. 173], 33 P. 23, 20 L.R.A. 199, 62 Am. St.Rep. 17; State ex rel. Le Brook v. Wheeler [43 Wash. 183], 86 P. 394. (emphasis supplied)

"In the case of Schiltz v. Roenitz, supra, the court, speaking to this question, said: 'The contention that the county court could, without notice to the plaintiff, or opportunity to him to defend against the charge of abandonment, grant an order depriving the plaintiff of his most sacred natural rights in respect to his child, so jealously guarded and protected by the laws, offends against all our ideas respecting the administration of justice, and is opposed to the principles which lie at the foundation of all judicial systems not essentially despotic in their character and methods of procedure. * * * We have not been referred to a single adjudicated case which holds that such an order as this is valid, as against the claim of the natural father to the services of his minor child, or as affording any evidence that he has aban-

doned it. Certainly, nothing is gained by saying that the proceeding is one quasi in rem, for, in all such, notice to the party affected and bound, either actual or constructive, is absolutely essential. * * * The fact still remains that, as to the father, the order is a mere nullity, and may be disregarded as such, whenever and wherever it comes in question, as against him, or as affecting his rights. * * * The judgments and decisions of a judicial tribunal are conclusive, and secure against collateral attack, only when the tribunal rendering them had jurisdiction of the subject-matter and of the parties' to be affected by them. By reason of the want of jurisdiction of the person of the plaintiff, the proceeding in question established nothing, as against him, and there is no evidence that he abandoned his child.'

"In the case of State ex rel. Le Brook v. Wheeler, supra, where the facts were similar to the facts in this case, in speaking to the point under consideration, we said: 'Respondents now contend that this order [the order of adoption] destroyed all of the father's rights, and that he cannot question the same in this collateral proceeding. This contention cannot be sustained. In order that the father might be bound by said order, it was necessary that some character of service should be made upon him, and that he should have had his day in court. * * * It is not claimed that the relator was in fact served. The undisputed evidence shows that he was not. This being true, the entire proceeding was void.' "

See, also, Annotations, 91 A.L.R. p. 1387 et seq.

The order of adoption was void, first, because made without the consent of respondent, and the court had no jurisdiction to enter the same. Vaughan v. Hubbard, 38 Idaho 451, 221 P. 1107; 1 Am.Jur. sec. 43, p. 643; In re Cozza, 163 Cal. 514, 126 P. 161, 165, Ann.Cas.1914A, 214; Stone v. Dickerson, Tex.Civ.App., 138 S.W.2d 200; Fitts v. Carpenter, Tex.Civ.App., 124 S.W.2d 420; Glendinning v. McComas, 188 Ga. 345, 3 S.E.2d 562. Second, the statute specifically provides that the adopting person must be a resident of the county in which the petition was filed. Section 31-1106, I.C.A.; 1 Cal.Jur. sec. 9, pp. 425, 426; In re McGrew, 183 Cal. 177, 190 P. 804; In re Hampton's Estate, 55 Cal.App. 2d 543, 131 P.2d 565, 573; Heirich v. Howe, 50 N.M. 90, 171 P.2d 312. The record shows that the child was temporarily domiciled in Washington County, or boarded out to her grandparents, and, further, that Weeks, the petitioner attempting to adopt the child, and the mother of the child did not reside in Washington County, but resided in Ada County. Weeks was enlisted in the armed forces, and it was not shown he had established a residence in the State of Idaho, consequently did not come within the terms of the statute.

Coming now to the second question involved, to-wit:

"The court erred in making that portion of Finding of Fact No. 6, wherein the Court finds 'that it would be to the best interest and advantage of the child that the respondent and his present wife be granted the custody of said minor child during the summer vacation periods' for the reason that said finding is not supported by any competent evidence."

There is no contention here that either the natural father or mother is not a fit person to have the care and custody of the minor child. The statute provides that the father and mother of the minor child are equally entitled to its custody, services and earnings. Section 31-1007, I.C.A. Appellant contends the trial court erred in that it changed the custody of the child to the extent that its natural father was to have its custody for three non-school months, and the mother nine months, with the right of visitation.

Appellant seeks in this court to set aside the trial court's order for the reason that it is not supported by competent evidence. This latter contention is not supported by the record.

■ It is settled law in this jurisdiction that district courts have exclusive original jurisdiction of all actions and proceedings in divorce actions, and may make all necessary orders in such proceedings, including the custody of minor children.

Section 31-705, I.C.A., provides:

"In an action for divorce the court may, before or after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same."

■ In awarding the custody of a child to either parent this court has held that the welfare of the child is of paramount importance. Roosma v. Moots, 62 Idaho 450, 459, 112 P.2d 1000; Arkoosh v. Arkoosh, 66 Idaho 607, 164 P.2d 590; Fish v. Fish, 67 Idaho 78, 170 P.2d 802. The question as to the disposition of the minor child in the first instance being committed to the discretion of the trial court, unless such discretion is clearly abused the judgment will not be disturbed. Fish v. Fish, supra. The same would be true where the custody is changed by modification of the decree.

In Stewart v. Stewart, 32 Idaho 180, 185, 180 P. 165, 166, this court said:

"Courts of equity possess a continuing jurisdiction over the custody of children and an inherent power to amend, modify, or annul orders of custody, which, in their nature, are but temporary, as the welfare of such children under changing conditions may demand." (Citing cases.)

■ Custody orders are necessarily subject to the control of the court, and do not become final, and may be modified or changed from time to time as the best interest of the child may appear (Sauvageau v. Sauvageau, 59 Idaho 190, 195, 81 P.2d 731; Holden v. Holden, 63 Idaho 70, 73, 116 P.2d 1003), which may be done in the

instant case should it appear it was not for the best interest of the child that its natural father have custody of said child during the non-school months.

The record in this case has been carefully considered. The question as to the custody of the minor child is one of great difficulty. Minds might well differ.

In Munson v. Munson, 27 Cal.2d 659, 166 P.2d 268, 272, the court held:

"It is settled that 'An application for a modification of an award of custody is addressed to the sound legal discretion of the trial court, *and its discretion will not be disturbed on appeal unless the record presents a clear case of an abuse of that discretion.*'" (Emphasis added) Foster v. Foster, 8 Cal.2d 719, 68 P.2d 719, 724.

 No clear abuse of discretion on the part of the trial court appears in modifying the decree of divorce, and the order should not be disturbed on appeal in the absence of such abuse.

The court did not err in holding the adoption proceedings void.

 The order modifying the decree of divorce should be modified, providing for the right of visitation by the natural father, Virgil Smith, at reasonable times and places during such regular school year when the mother is awarded the custody of the child; the mother of the child should likewise have the right to visit the child while in the custody of the father, and each should be permitted to make reasonable gifts and presents to said child, and it is so ordered. The order so modified is affirmed. Costs to respondent.

GIVENS and AILSHIE, JJ., concur.

MILLER, J., concurs in the conclusion.

HOLDEN, Justice (dissenting).

In an adoption proceeding notice to a parent is not necessary where the parent has either abandoned or ceased to provide for the support of a minor child. Sec. 31-1104, I.C.A. On the question of notice in an adoption proceeding, the statute covers a case of abandonment, as well as a case of ceasing to provide for the support of a minor. In other words, under the statute, where there is either an abandonment of a minor child, or failure to support a minor child, notice of the adoption proceeding need not be given.

In the case at bar the record shows respondent Smith, the "natural" father of Julia Cecil Smith (unnaturally) had ceased to support his minor child for a period of sixteen consecutive months, at the time the adoption proceedings were had.

Furthermore, in Finn v. Rees, 65 Idaho 181, 141 P.2d 976, 979, 980, this court, speaking through Mr. Justice Budge, held that where a father abandons his children, he thereby loses "all parental right to, or control over them, and his consent to their adoption by the Reeses in the Probate Court proceeding of Bonneville County was unnecessary. Neither was he [Finn, the "nat-

ural" father] entitled to notice of adoption proceedings," citing Andrino v. Yates, 12 Idaho 618, 87 P. 787; Nugent v. Powell, 4 Wyo. 173, 33 P. 23, 20 L.R.A. 199, 62 Am.St.Rep. 17; In re Mark's Adoption, 159 Misc. 348, 287 N.Y.S. 800; Gardner v. Hall, 132 N.J.Eq. 64, 26 A.2d 799; In re Hazuka's Adoption Case, 345 Pa. 432, 29 A.2d 88; Fielding v. Highsmith, 152 Fla. 837, 13 So.2d 208.

In the case at bar the record shows a failure to provide for the support of a minor child six years of age; that the failure to support extended over a long period of time, to-wit, sixteen consecutive months before the adoption proceedings were had. It is true that in the Finn case the record showed an' abandonment, but the rule, nevertheless, announced in that case must also necessarily apply with equal force to a case of failure to provide for the support of a minor child, because the statute (Sec. 31-1104, supra) expressly provides that notice to a parent in an adoption proceeding is not necessary where the parent has *either* abandoned or ceased to provide for the support of a minor child.

And in Finn v. Rees, supra, this court further held:

"The Probate court is a court of general and exclusive jurisdiction in adoption proceedings. [Citing cases.] In the instant case the probate court had jurisdiction of the children and the cause and jurisdiction to render the particular judgment or order

assailed, all of which appears upon the face of the proceedings had."

In Hartenbower v. Mutual Ben. Life Ins. Co. et al., 67 Idaho 254, 175 P.2d 698, 701, in harmony with the great weight of authority, this court held that "all presumptions are in favor of the regularity and validity of judgments of courts of general jurisdiction."

In the case at bar the record shows the probate court had jurisdiction of the subject matter; that it also had jurisdiction of the person of the minor child, Julia Cecil Smith, and of its natural mother, and her husband, Lenore Sanders Weeks, and, respondent having abandoned and ceased to provide for the support of his minor child (as found by the Probate court), gave that court full and complete jurisdiction to render judgment in the adoption proceedings.