IN THE MATTER OF THE ADOPTION
OF A MALE MINOR CHILD.

No. 4622.

FEBRUARY 29, 1968.

RICHARDSON, C.J., MIZUHA, MARUMOTO,
ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY MIZUHA, J.

The question for decision in this case is whether the non-consenting father to an adoption proceeding abandoned his child for a period of six months within the meaning of § 331-2, R.L.H. 1955, as amended.

Maureen and William Csencsits were married in New York City on February 4, 1961. A child, William, was born to them on November 14, 1961. In 1963, the mother took the child to Florida where she obtained a divorce decree from the father on July 20, 1964. The decree awarded her the care, custody, and control of the child, with reasonable visitation rights in the father. The father, who had been served by publication, did not appear in the divorce suit.

On September 22, 1964, the mother married the petitioner, William Lee Moore, in San Francisco. Moore, who is a chief sonar technician in the United States Navy, moved to Honolulu with his wife and the child in December, 1964.

The natural father, William Csencsits, has resided continuously in New York City, where he is employed as a security

officer. He has not contributed to the support of the child, other than sending token gifts of money on the child's birthdays, and the various holidays of the year. The correspondence from the natural father to the son were not in evidence, the mother stating that she threw them away. However, in evidence were letters sent by the mother to the natural father thanking him for cards containing monetary gifts, typically at Christmas, Easter, Halloween, and birthdays during the two year period between the divorce and adoption proceedings. At Easter in 1966, the appellant sent his son a card, and in May, 1966, the mother sent the appellant a picture of the boy, and nothing was said by the mother at that time about any adoption proceedings. In June, 1966, the appellant was served by registered mail with the adoption petition which charged him with having abandoned his son.

A contested hearing was held on September 6, 1966, and the court granted the petition for adoption on the ground that the appellant had abandoned the child for a period of six months prior to the filing of the petition.

The issue in this case revolves around the meaning of the word "abandonment" as used in § 331-2, R.L.H. 1955, as amended. Section 331-2 states that "* * * in all cases of adoption written consent shall be given by each of the living legal parents * * * who has not abandoned the child for a period of six months, * * *." The appellant did not give his consent to the adoption.

In *Adoption of Tom Minors*, 37 Haw. 532, the father and his wife were divorced on November 12, 1943. In September of 1943, the wife left Honolulu for Reno, Nevada, where she obtained a divorce. She then proceeded to New York for treatment for breast cancer. The father left Honolulu for New York on November 28, 1943, leaving the children with the wife's sister and brother-in-law, who were the petitioners in the adoption proceedings. From the time he left the territory, the father did not at any time communicate with the petitioners or with his children, nor did he contribute anything to the support of the children while they were in the custody of the petitioners. He never returned to Honolulu until August, 1946, when he came solely for the purpose of attending the trial of the adoption proceedings. Under

these facts, the court found abandonment. This court stated at p. 540:

"It must be apparent that it would be difficult to frame a definition of abandonment which could reasonably be applied to all cases. The most successful attempt to frame such a definition coming to our attention is contained in *In re MacLean*, 179 N.Y.S. 182, where it is said that 'The term "abandonment" means neglect and refusal to perform the natural and legal obligations of care and support. If a parent withholds his presence, his love, his care, the opportunity to display filial affection, and neglects to lend support and maintenance, such a parent relinquishes all parental claim, and abandons the child.' "

The statutory notion of abandonment imports "any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child; * * *." *Adoption of Tom Minors, supra* at 540. *See Re Adoption of Jane Doe*, 42 Haw. 250.

What then is abandonment? Without question, abandonment is conduct. The typical kinds of conduct are set forth in the first test of *Tom:* the withholding of parental presence, love, care, filial affection, and support and maintenance. In addition, the conduct on the part of the parent must be intentional, conduct which shows a settled purpose to relinquish all parental rights in the child.

This interpretation of abandonment is consistent with the majority of jurisdictions whose abandonment statutes predicate adoption without consent upon abandonment. *See In Re Adoption of Walton*, 123 Utah 380, 259 P.2d 881; *In Re Adoption of Southard*, 358 Pa. 386, 57 A.2d 904; *Glendinning* v. *McComas*, 188 Ga. 345, 3 S.E. 2d 562; *In Re Adoption of Strauser*, 65 Wyo. 98, 196 P.2d 862; *Whitton* v. *Scott*, 120 Vt. 452, 144 A.2d 706.

The trial court found that the appellant abandoned his child, but gave no written basis for such finding. In its oral decision, the court stated: "The Court feels in this case there has been adequate proof of abandonment. There has been a complete

failure to support, which is not denied. There has been nothing more than intermittent and token efforts to maintain contact. * * * and in any event, where there is failure to do anything at all toward supporting the child, the Court does not feel that a parent discharges his other responsibilities by intermittent — once or two or three times a year — efforts to demonstrate his interest and concern, * * *. As the Court recalls, in the *Tom* case the man was also in New York and the child or children were in Hawaii."

The court stressed the fact that the father failed to send support payments to the child. We believe that too much reliance was placed on this factor. The evidence shows that when Mrs. Moore asked and received custody of the child in the ex-parte Florida divorce, she did not request support payments from the appellant. At the adoption hearing, Mrs. Moore testified that she neither asked for nor expected any support from the appellant. Nonsupport is not synonymous with abandonment. *Smith* v. *Smith*, 67 Ida. 349, 180 P.2d 853; *In Re Adoption of Southard, supra; Glendinning* v. *McComas, supra.* And nonsupport is only one factor in determining whether a parent has abandoned his child. *Smith* v. *Smith, supra.* It was a factor in *Adoption of Tom Minors*, where the totality of conduct on the part of the father evinced an intent to abandon his children. But the facts in the *Tom* case are far different than those presented here. In the *Tom* case, the father voluntarily placed his children with his wife's sister and brother-in-law. Subsequently, the father not only failed to send support to his children, but also failed to communicate with, or inquire about them for an unbroken period of almost three years. From this conduct, the court inferred an intent on the part of the father to abandon his children. In this case, we find a father who is separated from his child, not of his own accord, but because of a divorce decree which granted the custody of the child to the mother. During the entire period of separation, the father has sent the child various cards and gifts during the various holidays of the year. In return, the son, through his mother, has kept in touch with the father.

We do not believe that there is sufficient evidence from which a court can infer that the appellant has abandoned his child. Lack of support alone is insufficient to establish abandonment in this case. There is no other evidence to show that the appellant ever intended to relinquish his claims to the child. On the contrary, the letters in evidence show that the appellant intended to remain in contact with his son, in spite of the distance between them. Three months prior to the filing of the adoption proceedings, the father sent an Easter card to his son and a small monetary gift. It was acknowledged by a letter on April 10, 1966, from the son to the father written by the mother. In May, 1966, the mother sent a picture of the son to the father for his birthday with a notation, "Many happy birthdays, Daddy. Love, your son, Billy boy." On June 4, 1966, the petition for adoption was filed by appellee.

After a careful review of the record, we find that the appellant did not abandon his son so as to preclude the need for his consent in this adoption proceeding.

The judgment of adoption is reversed, with directions to dismiss the petition for adoption.

*Helen B. Ryan* (*Clark, Corey, Robinson, Ryan & Ryan,* of counsel) for appellant.

*Gene A. Trini* for petitioner-appellee.