IN RE JACKSON ET UX

JACKSON ET UX. *v.* SPELLMAN

No. 3013

January 5, 1934.                    28 P.(2d) 125.

*H. H. Atkinson* and *Cooke & Stoddard,* for Appellants:

*Thatcher & Woodburn,* for Respondent:

**OPINION**

By the Court, DUCKER, J.:

This is an appeal from an order made by the Second judicial district court, by which a previous order of said court permitting David D. Jackson and Helen Lownes Jackson, his wife, to adopt John Franklin

Spellman and Howard Hilton Spellman, Jr., was vacated, set aside, and declared a nullity. The following is a summary of the facts:

Appellant Helen Lownes Jackson and respondent, Howard Hilton Spellman, were formerly husband and wife. Two children were born of their marriage. The parents separated in New York state and thereafter a certain agreement was entered into between them concerning the children. After the execution of this agreement the appellant Helen Lownes Jackson came to Reno, Nevada, and took up her residence at that place. On March 26, 1932, she obtained a decree of divorce from respondent upon the ground of cruelty. Respondent appeared in the action by attorney.

In the action for divorce the said agreement was confirmed, ratified, and approved by the court and made a part thereof. The agreement provided in part that she should have the sole custody and control of the two minor children, provided, however, that respondent should have the right to visit and see said children during six stated periods in each year, the dates for the beginning of each of said periods being specifically set forth in the agreement. It was further provided that, if she took up her abode more than 300 miles from New York City, the respondent had the right to cumulate his visits so as to enable him to see the children for the same number of days per year, either at one time or at several times. In addition to the foregoing, the agreement provided that the respondent should have the right to communicate with the children by letter at any time, and in his discretion at reasonable times by telephone or telegraph. It further provided that the wife should notify the husband of any serious illness of either of the children, and in such event permit him to visit them. It further provided that the wife should notify the husband of any important change in the plan of education of the children and permit the husband to have the opportunity to express his opinion in reference thereto. Another provision was that the husband and wife agreed, each for himself or herself, that neither

would ever, by word or deed, endeavor to alienate the feelings of the children for the other parent.

The agreement also contained a provision for the support and maintenance of the children. The husband has kept and performed the conditions on his part to be performed in regard to their support.

On the 21st day of April, 1932, appellant and David D. Jackson, her coappellant, were married in the town of Austin, State of Nevada, and are now husband and wife. On the 21st day of June, 1932, appellants petitioned the Second judicial district court of the State of Nevada for leave to adopt the said minor children, John Franklin Spellman and Howard Hilton Spellman, Jr. An agreement to adopt said children executed and acknowledged by appellants was filed in said proceeding on the same day. At the same time a written consent to such adoption, executed and acknowledged by appellant Helen Lownes Jackson, was filed in the proceeding. The agreement to adopt was approved by the court and ordered filed with the county clerk of Washoe County, Nevada. On the same day an order of adoption was made by the court, under and by virtue of which the appellants, David D. Jackson and Helen Lownes Jackson, adopted said minor children, whose names were by said order changed to John Franklin Jackson and Howard Hilton Jackson.

The consent of respondent was not had in the foregoing proceedings and he had no notice thereof until some time thereafter.

On the 23d day of August, 1932, after notice of motion duly given, respondent moved the court for an order setting aside said order of adoption. The motion was resisted by appellants. After a hearing which extended over several days and during which the parties testified and introduced evidence, the court made and entered the order appealed from.

The order vacating and declaring null and void the order permitting appellants to adopt the minor children was made by the court upon the ground that respondent was entitled to notice of the adoption proceedings.

1. Appellants contend that neither notice to respondent nor his consent was necessary under the circumstances of the case. They rely upon a provision of an act to provide for the adoption of children under which the adoption proceedings were had. The provision reads, in part: "A legitimate child cannot be adopted without the consent of its parents, if they be living and known; * * * ·provided, however, that such consent is not necessary in the following cases, to wit: * * * 2. From a father or mother adjudged guilty of adultery or cruelty or abandonment, and for any such cause divorced." Section 9478 N. C. L.

Respondent contends that the provision cannot be construed to dispense with his consent or notice to him, and, if construed to the contrary, it is unconstitutional in that it violates section 1 of the fourteenth amendment to the constitution of the United States, and section 8 of article 1 of the Nevada constitution. We need not consider the constitutional objection for we conclude that under the facts of this case the consent of respondent was absolutely essential to the validity of the adoption.

2. The adoption of a child is a proceeding that had its origin in the civil law. It was unknown to the common law of England and exists in those states having that law as the basis of their jurisprudence only and by virtue of statute.

3. Consent of the parents to the adoption of a legitimate child is a most important item of adoption procedure. Under our statute it is specially required to make the adoption legally effective, unless the case falls within one of the exceptions prescribed in the statute itself as sufficient ground for dispensing with parental consent. We are concerned only with the exception, stated, namely, where a father or mother has been adjudged guilty of cruelty and for such cause divorced. If we were to construe this provision literally, then the consent of respondent to the adoption would be unnecessary and the adoption valid without it. But the nature

of the proceedings forbids us to so construe it with reference to the facts of this case. The act of adoption takes a child away from its parent by destroying the legal and natural relation between them and creating in its. stead an artificial relation deemed by law to be for the best interests of the child. It is in derogation of the common law which regards the natural rights of the parents to be of a sacred and enduring character. As the statute confers a special power of this kind which may be exerted in opposition to the wishes, or without the consent of the parents, it should be strictly construed in their favor. The courts are quite uniform in applying the rule of strict construction in favor of the parents' natural rights in adoption proceedings. This was the construction placed upon section 224 of the Civil Code of California by the courts of that state in Re Cozza, 163 Cal. 514, 126 P. 161, 165 Ann. Cas. 1914A, 214. This section of the code is practically the same as the provision of our statute under consideration. In that case the mother had been divorced on the grounds of cruelty. A child of the divorced parents was adopted. The mother appeared and opposed the proceedings. The order of adoption made in the lower court was reversed. In the course of its opinion the supreme court said:

"Appellant here—the mother—contends that this is not the proper construction to be given to the section, and that, if it is to be so construed, it is, as far as it attempts to deprive her of the right to the custody of her children judicially awarded her by the decree of divorce without notice or her consent, unconstitutional, as depriving her of a vested right to her child without due process of law.

"There is no necessity for considering this constitutional objection, because we do not think the section is subject to the literal construction which the superior court placed upon it. Such a superficial interpretation is not permissible, when the spirit of our laws and the particular purpose of the enactment of the section respecting consent and the power of courts in divorce

proceedings over the custody of the children of the marriage are considered.

"In the latter proceeding the court has power and authority to make such orders as it may deem necessary and proper for the custody of the children of the marriage, without being constrained in any respect by the cause for which the divorce is granted, and may at any time vacate or modify such order. While section 224 provides generally that consent shall not be necessary to the adoption of children of the marriage from the parent against whom the decree is granted on the ground of cruelty, the section stops there. It does not assume to interfere with the orders of the court in divorce proceedings as to the custody of children, or, as said in Miller v. Higgins, 14 Cal. App. 161, 111 P. 403, 405, speaking generally of this section 224: 'This section does not undertake, nor is it intended, to modify the other sections of the Code, dealing specifically with the right of custody.'

"What is meant by this section, and what was intended by the Legislature, it having in mind the natural rights of parents, as also the authority of courts in divorce proceedings to award the custody of children to either spouse, was that when a divorce is granted for cruelty (we are only concerned with this ground here), and the custody of the children is awarded absolutely to the innocent party, the consent of the guilty one will not be required in adoption proceedings. It contemplates that by decree of court in such proceedings the court has deprived the guilty spouse of all right to such custody, and awarded it absolutely to the innocent party. That this is the proper interpretation of the section we think reasonably appears from the language used in the section in this same connection as to consent and with reference to other proceedings than in divorce, where it is provided that, when the parent has been 'judicially deprived' of the custody of the children on account of cruelty or neglect, the consent of such parent is not necessary. The Legislature, in providing a method for adoption, whereby the legal ties between the parent and

the child should be absolutely severed, could not have intended to interfere with the authority of the court in other proceedings involving the custody of the child, or that the decree of a court in a divorce proceeding which awarded such custody to the guilty spouse should be entirely ignored."

It will be seen that the court in the above case declined to construe the statute literally and held that it did not apply except in a case where the custody of the children had been given absolutely to the innocent spouse. A similar view was taken by the court in Re Lease, 99 Wash. 413, 169 P. 816, 818. The statute construed by the former court provided that, if parents are living separate and apart, the consent of both (consent to adoption) is not required, but such consent may be given by the parent having the care, custody, and control of such child. The custody of the child subsequently adopted had been awarded to its mother by decree of divorce. The adoption was had with her consent but without the consent of the father. The court, in the course of its opinion, after approving the reasoning in Re Cozza, supra, said:

"Now, recurring to the italicized portion of our statute above quoted, it might seem, when read superficially apart from the evident spirit, that, when the care and custody of a child is given to one parent by a divorce decree, the consent of such parent alone would be sufficient to authorize the adoption of such child by another. But when we are reminded of the conclusive and far-reaching effect of an adoption decree, and that it is not a mere custody decree like in a guardianship or other similar proceeding, every consideration of fairness to the natural parents dictates that the provisions of our statutes prescribing the conditions under which consent may be dispensed with should receive a strict construction. We are of the opinion that, to enable one parent having custody and control of a child to effectually consent to its adoption by another, such *custody and control must be of such an absolute and unconditional nature* that the *other parent's right in the child is extinguished,* or the other parent's conduct

is such as to estop him or her from asserting such right. Let us suppose that pending a divorce action, when, of course, the husband and wife are supposed to be living separate and apart, one or the other be given the temporary custody and control of their minor child. To give the statute the literal meaning contended for by counsel for appellant would enable the parent so having the custody and control of the child to effectually consent to its adoption by another. We cannot believe that such is the legislative intent." (Italics ours.)

4. The foregoing cases are illustrative of the strict construction which courts place upon the provisions in adoption statutes which dispense with the consent of a child's parents. The consent of the natural parents lies at the foundation of statutes of adoption. 1 Cal. Juris. p. 436. It ought not to be dispensed with in response to the mere letter of a statute, but only when its letter and spirit conjoin in showing that such was the plain intention of the legislature.

5. Every intendment should be in favor of the claim of the parent and where the statute is open to construction and interpretation it should be construed in support of a natural parent. In re Cozza, supra; 1 Cal. Juris. p. 437.

It is true that in the case last cited the custody of the child had been awarded to the guilty party in the divorce action, whereas here, the custody was awarded to the innocent party. But that difference does not distinguish the case in principle from the instant case. Section 224 does not prescribe any exception as to the necessary consent contingent on the custody of the child.

6. In the case before us the custody of the children was not of such an unconditional character as to divest the respondent of all paternal rights. His rights were recognized in the decree in accordance with the agreement between the mother and father—the right of visitation to enjoy the society of his children; the right to communicate with them by letter, telephone, or telegraph; the right to come to them in case of serious illness; the right to have a voice in any plan for their education; the right to support and maintain them;

and the right to remain secure in their feelings of affection. These rights flowing from the family relation, guaranteed by the solemn written engagement of the father and mother and secured in the decree of divorce, were all more or less violated by the order of adoption. We can conceive of few circumstances more calculated to alienate the feelings of a child for a father than to destroy the family relation between them and to give it a new father created by law, yet such is the ruthless effect of the adoption in this case. We cannot construe the statute as intending that a valid adoption could be effected in such a situation. More precisely, we are of the opinion that where a divorce is granted for cruelty and the innocent spouse is awarded the custody of the children (as in this case), consent of the guilty spouse can only be dispensed with in a proceeding for adoption of such children when the custody is awarded to the innocent party without reserving any rights whatever in the guilty spouse. The custody must be absolute. To conclude otherwise would be to attribute to the legislature a very slight regard for the great domestic relation of parent and child. As previously stated, consent lies at the foundation of adoption statutes. It is so with our statute. The order of adoption in this case was void because made without the consent of respondent.

7. There is nothing in appellant's contention that the adoption proceedings were not judicial proceedings and that the court therefore had no authority to set aside the order of adoption. If their contention were allowed, then the order of adoption would be void for the reason, as the record shows, that the adoption proceedings were all court proceedings. The district judge under the statute does exercise judicial functions. He hears witnesses testifying under oath and from the evidence determines and adjudges what is for the best interests of the child. The order of adoption is entered in the minutes of the district court of the county where the proceedings are had.

Unless the district judge exercises judicial functions

and is acting as a court in adoption proceedings, the adoption statute is unconstitutional, for the constitution confers exclusive original jurisdiction over the persons of minors on district courts. That the legislature referred to the tribunal as a district judge is of no consequence. As said in Sartin v. Snell, 87 Kan. 485, 125 P. 47, 49 Ann. Cas. 1913E, 384: "The Legislature often uses the words 'court' and 'judge of the court,' 'district court' and 'judge of the district court,' without discrimination. Whenever the power or duty imposed is found, from a consideration of the object and purposes of the act, to be one which is more properly the function of the court, it will be so construed. * * * "

Miss Peck, in her work on adoption laws in the United States, considers our statute on adoption as conferring jurisdiction on the district court. She says: "In Nevada jurisdiction in adoption and jurisdiction in juvenile-court cases go into separate sessions of the district court." Adoption Laws in the United States, by Emelyn Foster Peck, Bureau Publication No. 148, page 7.

We construe the act to provide for the adoption of children to provide for a court proceeding.

It is ordered that the order appealed from be and it is hereby affirmed.

### ON PETITION FOR REHEARING

February 21, 1934.

*Per Curiam:*

Rehearing denied.