530 P.2d 413 (1975)
In the Matter of the ADOPTION OF William Robert NARRAGON.
Robert V. BITTLESTON and Aileen Bittleston, Appellants (Petitioners below),
v.
Robert E. NARRAGON, Appellee (Contestant below).
No. 4402.
Supreme Court of Wyoming.
January 2, 1975.
Leonard E. Lang, Casper, for appellants.
George L. Arnold and Neil J. Short, law student, Laramie, for appellee.
Before PARKER,[*] C.J., and GUTHRIE and McCLINTOCK, JJ.
Mr. Justice GUTHRIE delivered the opinion of the court.
Appellants herein appeal from an order dismissing the adoption petition of Robert V. Bittleston and Aileen Bittleston, his wife, who is the natural mother of William Robert Narragon, whom they seek to adopt. Robert E. Narragon, the father of the child, refused his consent to such adoption and appeared and objected thereto. The factual situation is not in dispute and insofar as material is as follows:
The child, William Robert Narragon, was born on February 2, 1965. His father has been confined in the penitentiary since February 2, 1966, under a sentence for the term of 25 to 30 years. The Natrona County Department of Public Assistance and Social Services furnished and supplied aid and support to the then Mrs. Narragon from August 23, 1965, until January 1966, and the father has contributed nothing to the child's support, being unable in his confinement to earn any money. Mrs. Narragon was married to Robert V. Bittleston on December 29, 1967, and the child has lived in his home and been supported by him since that date. Reliance was made in the petition for adoption upon § 1-710.2, W.S. 1957, 1973 Cum.Supp., which so far as applicable is as follows:
"An adoption may be decreed without the written consent of the parent or parents *414 of the child sought to be adopted where said non-consenting mother or father:
* * * * * *
"(c) has caused the child to be maintained in a public or private children's institution or the Wyoming department of public welfare for a period of one year without contributing anything to the support of said child during said period."
The trial court, in its ruling denying the adoption, held the maintenance by the Wyoming Department of Public Welfare did not bring this case under the statute.
Appellants contend:
"* * * that the word `by' should be impliedly inserted after the word `or', so that the section would read as follows:
"`has caused the child to be maintained in a public or private children's institution or (by) the Wyoming department of public welfare for a period of one year without contributing anything to the support of said child during said period.'"
They then set out that the welfare department has no facilities for the care and maintenance of such children and that 95 percent of the children who are recipients of aid from the department remain in custody of the parents.
It is conceded that under this factual situation there is a strong temptation to agree with appellants but it might be suggested there is another available inference, and inasmuch as the first part of the paragraph contemplates maintenance in a public or private institution or a separation from parental control this statute could have been directed to a situation wherein a parent has relinquished such custody. Many other states have such statutory schemes, 2 Am.Jur.2d Adoption, § 30, p. 885.
There is a well-recognized and almost universal rule that when a proceeding is against a nonconsenting parent in an adoption proceeding the statute must be strictly construed and every reasonable intendment is made in favor of the nonconsenting parent's claims, In re Adoption of Sharp, 197 Kan. 502, 419 P.2d 812, 814; Heard v. Bauman, Tex., 443 S.W.2d 715, 719; In re Slaughter, Mo. App., 290 S.W.2d 408, 412; Woodson v. Lee, 221 Ark. 517, 254 S.W.2d 326, 329; Glendinning v. McComas, 188 Ga. 345, 3 S.E.2d 562, 563; Smith v. Smith, 67 Idaho 349, 180 P.2d 853, 856; In re Jackson, 55 Nev. 174, 28 P.2d 125, 129, 91 A.L.R. 1381. This court has heretofore expressed its duty in construing statutes, Ward v. Yoder, Wyo., 355 P.2d 371, 376, rehearing denied, 357 P.2d 180:
"In State ex rel. Murane v. Jack, 52 Wyo. 173, 70 P.2d 888, 71 P.2d 917, 112 A.L.R. 161, we gave effect to the rule that where the legislature has constitutional power to enact a given law and properly frames an Act it is the duty of the court to construe it for proper effectuation without adding to or eliding from the words recited."
This court in the later case of Lo Sasso v. Braun, Wyo., 386 P.2d 630, 631, 632, further has held that when the legislature had an intention which it failed to express it is improper to act for the legislature by adding such exceptions and that it should not "enlarge, stretch, expand or extend a statute to matters not falling within its express provisions." As pointed out in Lo Sasso, if this construction seems harsh and unjust it should be a matter of legislative correction and not that of the court. It would seem particularly important, since this involves the matter of minor children, that the intention of the legislature be clearly expressed and the statute clarified.
The judgment is affirmed.
PARKER, Chief Justice (dissenting).
Notwithstanding the existence of a legal justification for affirming the judgment which denied the adoption, I am unable to concur in that disposition which, as the majority concedes, produces a harsh and unjust result. While in the interests of predictability courts often find themselves bound by precedent and legal pronouncements *415 rather than by equitable principles, they should be so canalized only when any other result is unwarranted under a reasonable view of the facts and a consideration of all applicable principles. In that connection Wyoming cases are replete with discussion about the importance of a child's welfare.
The trial court's holding on which we now place the stamp of approval will deprive the boy of any real father during his minority and will keep him tied to a male parent convicted of rape and sentenced to the penitentiary for a term of 25 to 30 years when the child was a few weeks old. This court's pronouncement says such a result is unavoidable because of the recognized legal principles that adoption statutes must be construed in favor of nonconsenting parents and that the court cannot enlarge, stretch, expand, or extend a statute by interpretation. Conceding the correctness of those rules, we should not overlook either the circumstances of the instant situation or legal principles which are contrary to the ones listed in the opinion.
As background we note that in Wyoming the legislature keeps no record of committee hearings or statements made by its members. This lack can force a court, obligated to interpret a statute, to read it literally  sometimes blindly. However, such a course is often not truly requisite. In the present situation, our neighboring state of Montana at the time the Wyoming legislature passed the controlling statute, here § 1-710.2, W.S. 1957, 1973 Cum.Supp., had one quite similar, § 61-205, Revised Codes of Montana, 1947, which in germane part read:
"* * * consent shall not be required from a father or mother,
* * * * * *
"(e) who has caused the child to be maintained by any public or private children's institution, charitable agency, or any licensed adoption agency, or the state department of public welfare of the state of Montana for a period of one (1) year without contributing to the support of said child during said period, if able * * *." (Emphasis supplied.)
That provision and the one here in issue are essentially similar, except for the use in the Wyoming statute of the word "in" instead of the word "by." The Wyoming statute provides:
"An adoption may be decreed without the written consent of the parent * * * of the child sought to be adopted where said nonconsenting mother or father: * * * has caused the child to be maintained in a public or private children's institution or the Wyoming department of public welfare for a period of one year without contributing anything to the support of said child during said period." (Emphasis supplied.)
Is it reasonable to think that the Wyoming legislators did not consult the Montana statute and pattern ours after the one in that State?
Even aside from that consideration, the portion of the Wyoming statute in issue is totally and completely meaningless if the word "in" is to be used since the Wyoming Department of Public Welfare[1] has no institution in which anyone can be maintained. There is a principle of law which in the present litigation far outweighs those principles which influenced the trial court and which are emphasized in the majority opinion. The well known authority Sutherland states it well by saying:
"A large majority of the cases permit the substitution of one word for another where it is necessary to carry out the legislative intent or express clearly manifested meaning. Although, as one court said, `it is sometimes called "exceptional construction," and we are not unmindful of the dangers attending the exercise of such powers by the courts. But, properly understood, and exercised with due caution, it is not judicial legislation, but is simply a method of arriving at legislative *416 intent defectively expressed.' * * *
"Courts have permitted the substitution of one word for another: where it is necessary to make the act harmonious or to avoid repugnancy or inconsistency, * * * [or] where the substitution will make the act sensible, or give it force and effect, or make it rational * * *." 2A Sutherland, Statutory Construction (4 ed. by Sands), pp. 163-164.
To a similar effect is Murray's Lessee v. Baker, 3 Wheat. 541, 544, 4 L.Ed. 454; People ex rel. Barrett v. Anderson, 398 Ill. 480, 76 N.E.2d 773, 776, and Territory ex rel. Wade v. Ashenfelter, 4 N.M., John, 85, 12 P. 879, 894.
I would reverse the judgment.
NOTES
[*] At the time this matter was considered and the opinion drafted, Justice Glenn Parker was a member of the court and the chief justice. He has, however, since retired.
[1] Now known as the Department of Health and Social Services.